**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA**

CASE NO: 6:25-cv-02490-AGM-RMN

REYNEL SUAREZ, on behalf of himself
individually and others similarly situated.

    *Plaintiff,*

v.

STEEL X HOMES, LLC,
RICHARD RIVERA,
CATALINA REBOLLEDO,
PAAVO SALMI,
HALLMARK HOME MORTGAGE, LLC,
FAIRWAY INDEPENDENT MORTGAGE, CORP.,
ALEJANDRO MARRIAGA
and KAYE FLANAGAN,

    *Defendants.*

_____/

**PLAINTIFF'S OMNIBUS RESPONSE TO
DEFENDANT ALEJANDRO MARRIAGA'S
MOTION TO DISMISS AND MOTION TO STAY DISCOVERY**

Plaintiff, Reynel Suarez ("Suarez"), files this omnibus response in opposition

to Defendant Alejandro Marriaga's ("Marriaga") Amended Motion to Dismiss

[ECF No. 94] and his Motion to Stay Discovery Pending Resolution of the Motion

to Dismiss [ECF No. 98].

**PRELIMINARY STATEMENT**

Marriaga claims to be an innocent escrow agent wrongfully caught in the

crosshairs of a multi-million-dollar loan fraud scheme. As the escrow agent, he had

a fiduciary duty to every borrower to safeguard their money. If truly innocent, he should welcome discovery into his accounting practices, not hide from it. But, just as the Florida Bar already found in his disbarment proceedings, Marriaga "intentionally misdirected funds from real estate closings, failed to advise buyers of his conflicts of interest, and failed to comply with trust accounting rules" and "clearly knew disbursements were being made contrary to the disclosure statements . . . and that the disbursements were being made to the benefit of Steel X and/or its owners." Although Marriaga was likely not the mastermind behind the Steel X Fraud, his role was integral to moving the borrower's loan money from the bank to Steel X and its owners.

## COMPLAINT ALLEGATIONS

Marriaga owned and operated Marriaga Law Group, P.A. d/b/a Lawyers Title Network.[1] Marriaga held himself out to Suarez and other members of the putative class as the "independent" escrow agent, who handled the real estate closings for the construction loans at issue in this case.[2] He was not a neutral settlement agent, but had a long history with Steel X, including acting as their registered agent, representing them in court cases, and receiving payments and other commissions for his role as the escrow agent directly from Steel X.[3] Marriaga was disbarred in Florida for his role in this scheme.[4] A copy of the Florida Bar's

---

[1] ECF No. 42 ("Am. Compl.") ¶ 34.
[2] Am. Compl. ¶ 36.
[3] Am. Compl. ¶ 38.
[4] Am. Compl. ¶ 37.

opinion is attached as **Exhibit A**. The Florida Bar found that (1) he failed to disclose his longstanding relationship with Steel X to the borrowers; and (2) Marriaga diverted funds directly to Steel X and its related entities which should have been held in escrow and paid to the actual builder of the property.[5] Marriaga's disbursement of escrow funds to Steel X, its owners, and other related entities was in conflict with the plain terms of the agreements which obligated him to hold the money in escrow.[6]

**ARGUMENT**

I. **Marriaga played a central role in the Steel X Fraud by posing as the "independent" escrow agent to lull borrowers into believing their loan funds were safeguarded.**

Each of Marriaga's arguments is grounded in the same mistaken premise: this Court should only evaluate Suarez's allegations against Marriaga directly when analyzing whether Suarez's complaint properly states a RICO conspiracy claim against him. But this is a misapplication of conspiracy law, which, at its base, attaches liability to a person who is part of a conspiracy for all the illegal acts of their coconspirators. Those who "agreed to the overall objective of the conspiracy are also liable for the harm caused directly by the criminal enterprise. *See ADA v. Cigna Corp.*, 605 F. 3d 1283, 1293 (11th Cir. 2010).

As explained in depth in Suarez's omnibus response to the motions to dismiss of Hallmark Home Mortgage, LLC, Fairway Independent Mortgage Corp.,

---

[5] Am. Compl. ¶ 38.
[6] Am. Compl. ¶¶ 32, 39.

and Kaye Flanagan [ECF No. 78], the Steel X Fraud includes hundreds of unique acts of wire fraud, mail fraud, insurance fraud, bank fraud,

### A. Marriaga's intentional and wrongful disbursement of escrow funds to Steel X is circumstantial evidence he agreed to further the objectives of the conspiracy.

The Steel X Fraud's objective was to dupe prospective homeowners into taking out a construction loan from Hallmark based on the promise that Steel X would deliver them a completed home. But rather than use those loan funds to construct a home, the loan funds were disbursed directly to Steel X, its owners, and other companies owned and controlled by them. Now Suarez and the putative class find their loan funds fully depleted and their promised home nowhere near completed. Marriaga's role as the "independent" agent enabled this fraud to succeed because instead of safeguarding the borrower's money, he sent it to Steel X without the borrower's knowledge.

"There are two paths to establishing a RICO conspiracy claim: (1) showing that the defendant agreed to the overall objective of the conspiracy; or (2) showing that the defendant agreed to commit two predicate acts." *Otto Candies, LLC v. Citigroup Inc.*, 137 F. 4th 1158, 1201 (11th Cir. 2025) (internal quotations and citations omitted). "A defendant's participation in a conspiracy may be inferred from acts of his which furthered the objectives of the conspiracy." *United States v. Kopituk*, 690 F.2d 1289, 1323 (11th Cir. 1982). "Though 'a bare assertion of conspiracy will not suffice' to prove a RICO conspiracy, plaintiffs 'need not offer direct evidence of a RICO agreement; the existence of conspiracy may be inferred

from the conduct of the participants.'" *See Otto Candies, LLC*, 137 F. 4th at 1201 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "Because 'federal courts have recognized that the nature of conspiracies often makes it impossible for the plaintiff to provide details at the pleading stage,' courts have concluded that 'the pleader should be allowed to resort to the discovery process and not be subjected to a dismissal of his complaint.'" *Id.* "Because when alleging a RICO conspiracy 'it is sufficient to show that [a defendant] had knowledge of the essential nature of the plan.'" *Id.* (quoting *United States v. Kopituk*, 690 F.2d 1289, 1323 (11th Cir. 1982)).

The Florida Bar has already done the heavy lifting as it relates to Marriaga's role in the Steel X Fraud. Because the Florida bar opinion is incorporated into the complaint, the factual findings are taken as true for purposes of this motion to dismiss. *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) ("[o]ur prior decisions also make clear that a document need not be physically attached to a pleading to be incorporated by reference into it; if the document's contents are alleged in a complaint and no party questions those contents, we may consider such a document provided it meets the centrality requirement imposed."). The disbarment opinion found that Marriaga hid his affiliation with Steel X, its owners, and their related companies, and he intentionally misdirected the loan money to Steel X and its owners as part of this scheme. **Exhibit A** pp. 1-6. Suarez alleges that Marriaga did the same misdirecting of his funds as Marriaga did to the borrowers at issue in the Florida Bar proceedings. His knowing and intentional

breach of his fiduciary duty to Saurez in furtherance of the Steel X Fraud is sufficient at the pleading stage to state a claim that Marriaga was a part of the RICO conspiracy at issue.

Marriaga argues that because he did not participate or control the management of the enterprise, he cannot be held liable for RICO conspiracy. However, this argument mixes up the basis for liability between 18 U.S.C. § 1962(c) and 1962(d). Pursuant to 18 U.S.C. § 1962(d), covering liability for a RICO Conspiracy, those who "agreed to the overall objective of the conspiracy" are also liable for the harm caused directly by the criminal enterprise. *See also Absolute Activist Value Master Fund v. Devine*, 233 F. Supp. 3d 1297, 1320 (M.D. Fla. 2017) (discussing differences between liability for violation of subsections (c) and (d) of the Federal RICO statute).

### B. The analysis turns on Marriaga's knowledge of the wrongdoing.

Putting aside the fact that Marriaga's arguments are all based on the requirements to plead a claim 1962(c) rather than 1962(d), either analysis boils down to whether Marriaga performed services that unknowingly aided the Steel X Fraud or whether he knew of the overall objective and helped achieve the end. *See Coquina Invs. v. Rothstein*, 2011 U.S. Dist. LEXIS 121039 at **24-25 (S.D. Fla. Oct. 19, 2011) ("the Eleventh Circuit has held that lower-rung participants acting under the direction of the enterprise's upper management may be liable under §

1962(c) by 'knowingly implementing decisions, as well as by making them.'")
(quoting *United States v. Starrett*, 55 F. 3d 1525, 1548 (11th Cir. 1995)).

As laid out in the complaint, Marriaga lied to Suarez and other borrowers that he was a neutral settlement agent.[7] In reality, Marriaga was working with Steel X and Hallmark to funnel all of the borrowers' loan money directly to Steel X.[8] The plain terms of the Closing Disclosure provided to Suarez stated that Marriaga would hold a total of $11,285.00 in escrow.[9] But Marriaga ignored those terms and sent the money directly to Steel X.[10] "Marriaga 'did so with the intent to conceal those connections from the buyers and to reroute their escrow funds in violation of the closing disclosures, for his own benefit and to the detriment of his clients, without notice or consent.'"[11] Marriaga abused his position of trust as a lawyer in our community to the detriment of Suarez and these borrowers. He had full knowledge that Steel X was not entitled to this money and sent it to them anyways, while he sat back and collected transaction fees for his own benefit. Taking direction from the management of the enterprise with full knowledge of what is going on behind the scenes is enough to state a claim that Marriaga was a part of the RICO conspiracy.

---

[7] Am. Compl. ¶ 36.
[8] Am. Compl ¶ 36.
[9] Am. Compl. ¶ 32(b).
[10] Am. Compl. ¶ 32.
[11] Am. Compl. ¶ 38.

**II. Because the motion to dismiss should be denied, there is no basis to stay discovery in the interim.**

Marriaga's motion to dismiss does not argue dismissal is warranted based on any basis that is not potentially curable by further amending the complaint. As outlined above, Marriaga's arguments for dismissal should be denied. But even if his arguments may have some appeal to the Court upon its "preliminary peak" at the motion, it still does not meet the standard to implement a stay of discovery. The Middle District of Florida's Civil Discovery Handbook cautions that "[n]ormally, the pendency of a motion to dismiss or a motion for summary judgment will not justify a unilateral motion to stay discovery pending resolution of the dispositive motion. Such motions for stay are rarely granted." Middle District Discovery (2021) § (I)(E)(4). "Absent a clear indication a case will be dismissed in its entirety, a motion to stay should be denied." *McCrimmon v. Centurion of Fla., LLC*, 2020 U.S. Dist. LEXIS 199518 at *5 (M.D. Fla. Oct. 27, 2020) (internal citations omitted). When a motion to dismiss would likely result in leave to amend because it is based on failure to state a claim, a stay of discovery is unwarranted. *See Cobos v. United Airlines, Inc.*, 2026 U.S. Dist. LEXIS 80983 at *3 (M.D. Fla. Apr. 14, 2026).

Discovery should still proceed even if the Court agrees with Marriaga that Suarez has not adequately alleged that Marriaga was part of the conspiracy. The Eleventh Circuit recognizes that a pleader a chance at discovery when pleading conspiracy claims because the nature of conspiracies make it nearly impossible for

a pleader to be aware of what internal discussions were being had or how the conspiracy operated. *See Otto Candies, LLC*, 137 F. 4th at 1201 (citing 5 Wright & Miller, § 1233).

The only discovery currently pending between Suarez and Marriaga is one request for production with 10 categories of requests. Attached here as **Exhibit B**. Marriaga requested multiple extensions which were unopposed by the Suarez under the representation that documents were being gathered. Then on April 17, 2026, Marriaga responded with objections to every category of requests and produced no responsive documents. In compliance with this Court's rules, Suarez's counsel and Marriaga had a phone call to discuss these objections, where Marriaga claimed to not be the escrow agent for any of the transactions at issue, and therefore the document requests — aimed mainly at his role as an escrow agent — were not capturing any responsive documents. The parties then agreed that Marriaga would recheck the documents to see whether they represented he was acting as the escrow agent. *See* e-mail summary attached as **Exhibit C**. After another two weeks went by, Suarez followed up and was told by Marriaga he would be filing a motion to stay discovery. Marriaga has failed to make a "specific showing of prejudice or burdensomeness" to justify a stay of discovery. *See Wiand v. ATC Brokers Ltd.*, 2022 U.S. Dist. LEXIS 76675 (M.D. Fla. Apr. 27, 2022).

**CONCLUSION**

Defendant Alejandro Marriaga's Amended Motion to Dismiss [ECF No. 94] and his Motion to Stay Discovery Pending Resolution of the Motion to Dismiss [ECF No. 98] should be denied.

Respectfully submitted,

**WEIL LAW FIRM, P.A.**

By: */s/ Luke T. Jacobs*
    Luke T. Jacobs, Esq.
Florida Bar No. 1024787
E-Mail: *Ljacobs@weillawfirm.net*
E-Mail: *Service@weillawfirm.net*
150 SE 2nd Avenue, Suite 904
Miami, FL 33131
Telephone: (305) 372-5352

<u>**CERTIFICATE OF SERVICE**</u>

I certify that a true and correct copy of the foregoing was served on all counsel of record via the electronic filing system on May 15, 2026, or via U.S. Mail on the parties listed below.

Reginald J. Clyne, Esq.
Eddie L. Holiday III, Esq.
Quintairos, Prieto, Wood, Boyer, P.A.
9300 South Dadeland Blvd., 4th Floor
Miami, FL 33156
Reginald.clyne@qpwblaw.com
Eddie.Holiday@qpwblaw.com
Cecilia.quevedo@qpwblaw.com
**Counsel for Hallmark Home Mortgage, LLC**

C. Charles Townsend, Esq.
Hinshaw & Culbertson LLP
1717 Main Street, Suite 3625
Dallas, TX 75201
ctownsend@hinshawlaw.com
Joseph A. Apatov, Esq.
Hinshaw & Culbertson LLP
201 East Las Olas Blvd., Suite 1450
Fort Lauderdale, FL 33301
japatov@hinshawlaw.com
**Counsel for Fairway Independent Mortgage Corp.**

Erik J. Washington, Esq.
The Washington Law Firm P.A.
PO Box 536086
Orlando, FL 32853
ewashington@washfirm.com
**Counsel for Paavo Salmi**

***Via U.S. Mail***

Alejandro Marriaga
1802 N Alafaya Trail, Suite 152
Orlando, FL 32826
***Pro Se***

Richard Rivera
9907 8th Street, Unit #845,
Gotha, FL 34734
***Pro Se***

Catalina Rebolledo
9907 8th Street, Unit #845,
Gotha, FL 34734
***Pro Se***

By: *<u>/s/ Luke T. Jacobs</u>*
Luke T. Jacobs, Esq.